Good morning. Good afternoon. Good evening. Good day. Been a long day. Good day. Would you mind pulling the microphone closer to you? Sure. Thank you, Your Honor. My name is Leonard Feldman and I'm counsel in this matter for Superstition Crushing. I'd like to reserve five minutes for rebuttal and I'll keep track of my own time. It occurred to me when I was reading over the briefs in preparation for oral argument that there's an easy and probably easier way to decide this case than the way we presented in our briefs. And that is to look at the policies the same way this Court did in Cairn-Cain. Start with the most recent policy. That's the 2005-2006 policy. Travelers paid $250,000 under that policy, so it's not an issue. Then let's move to the 04-05 policy. And then after dealing with the 04-05 policy, we can deal with the three policies that came before that. So that's what I'd like to do right now is talk about the 04-05 policy and then come back to the 01-02, 02-03, and 03-04 policies. In order to avoid coverage under the 04-05 policy, Travelers has to point to something in the policy that clearly and distinctly excludes coverage for employee dishonesty that occurred during that policy period. In our opening brief, and then again in our reply brief, we march through the policy provisions that either Travelers or the District Court has cited here, and we show that none of those provisions limits liability as to the 04-05 policy period. If you look, for example, at Section B-10, which is the provision that the District Court cited, that's a grant of coverage, it is not an exclusion of coverage. Ginsburg. But, Counsel, in that portion of the policy, it says that it doesn't add to the coverage. What do you make of that? Well, Your Honor, if you're asking specifically about B-10, the way to interpret B-10 correctly, and again, this exact same provision was also at issue in Karen and the other aspect of the policy. That's basically every provision other than B-10. It looks to the events that occurred and the losses that were suffered during the policy period. What B-10 says, it essentially creates a very small and discreet claims made aspect to the policy. And it says that if you're in the 05-06 time period and you want to make a claim for, say, the 01-02 or the 02-03 time period, you can utilize B-10 to do that. And so what we have is a seamless ---- Well, but just a minute, just a minute. If we're looking at the 04-05, one could say under 10b that insurance under this provision is not in addition to the limits of insurance applying the 205-2005-2006 policy. And if you're arguing, as I suggest you were, or you suggested you were, we've already given 250,000 for the 05-06, so it's not in addition to that policy and is limited to the lesser amount recoverable. Right. And what that means, Your Honor, is that if ---- excuse me. If superstition tried to recover for the 04-05 policy period under the 05-06 policy, it wouldn't be able to do that because the 05-06 policy has already been exhausted. But what ---- No, but it doesn't really say that. It says not in addition to the limits and is limited to the lesser amount recoverable under the current policy and any of the previous policies. Your Honor, I ---- let me pull out B-10 because that's not what I recall reading in B-10. What I recall seeing in B-10 is, again, you have to walk through it word by word. The insurance under ---- so you're talking about 10b. Yes. Right. The insurance under this condition is part of, not in addition to, the limits of insurance applying to this insurance and is limited to the lesser of the amount recoverable under this insurance as of this effective date. Under that policy and any of the prior policies. Right. And so what that means is that if you had, say, a $200,000 coverage limit under the earlier policy and you have a $250,000 coverage under the current policy, you are limited to the lesser of those two amounts. But, again, superstition here has not sought to recover for the 04-05 losses under the policy because the 04-05 policy specifically states that they can make a claim under that policy so long as they do so within 12 months. And there's no dispute here that that's exactly what superstition did. And if you look at what this Court did ---- Under your logic, though, doesn't that limit you to two policies? It does, except there's a wrinkle in that. And that wrinkle can be seen in Karen Kane. Karen Kane involved three policy periods. The current policy period, the immediately prior policy period, and one even earlier than that. And what Karen Kane said was that as to the immediately prior policy period, it was economically irrational and didn't make any sense, the insurer's argument, that the policyholder couldn't recover under that period. That's, again, the 04-05 policy period. And then the Karen Kane Court addressed the earlier policy periods, which here we're talking about 01, 02, 02, 03, and 03-04. And it resolved that issue by way of the adverse domination and control doctrine. And that's where we wind up as to those earlier policies. And that's why I was saying when I was reading through the briefs, we lump all this stuff together, it's much clearer. And, really, this Court doesn't have to do anything new. It just has to do exactly what it did in Karen Kane. Well, it's a different state involved, though. It is a different state. But I have yet to see any distinction between the two. Well, but Arizona has a different policy, even in regard to how we determine if it's ambiguous. Right. I mean, under Arizona policy, we look at the social policy of the state to determine what to do. Okay. Which we do that even before we give credence to the fact that the insurance company ought to pay. We look at the social policy of the state. Well, it's broader than that. Well, perhaps so. But, I mean, I can tell you that in our states, our Supreme Courts would decide this very case differently, wouldn't they? Oh, they would. Absolutely. Between Montana and Idaho. I mean, precisely. They wouldn't have any social policy of the state involved at all. So let's say that's ridiculous. Let's look at Karen Kane. Montana, you win. Idaho, you lose. But the question is, it's Arizona law. So Karen Kane doesn't help you that much, I think. Well, I would beg to differ with you, and I'll tell you exactly why. Karen Kane rests on three principles. One is it says that the policyholder argument there is supported by case law. Two is it says the policyholder's argument there is supported by the objectively reasonable expectations of the policyholder. And there is absolutely no distinction between the reasonable expectations doctrine in Arizona and the reasonable expectations doctrine in California. However, however, if I were to take your argument and take it as to its logic, if Ward had embezzled $50,000 per year rather than what she took, you wouldn't be arguing the position you're now taking, would you? Because under the $50,000 per year, under your position, you'd only get $225,000, because you'd have to take $5,000 out each year for the deductible. And so you'd get $45,000 a year times five years. However, under the district court's interpretation, you would get $245,000 a year, because you'd have $250,000 for the year of discovery less than $5,000. So it seems to me that given a reasonable expectations argument, it just depends on what you want to collect. Well, Your Honor, looking at this from the position of the policyholder, in the hypothetical that you just gave, the policyholder has two alternatives. One is to make a claim under each individual policy, and that would, as you pointed out, be $50,000 in each policy year minus $5,000. And I'm putting aside any timeliness issues. The other option would be to make a claim under the Section B-10, which is a provision that Judge Fletcher asked about, and that would allow you to reach back. And I think it would still bring with it the $5,000 deductible per year. Well, I tried to use your analysis in order to see if I could bring back, and I couldn't find it even under your argument. That's why I'm worried about that as to reasonable expectations. My second part of it is as to social policy. Right. I mean, as we look at social policy and we look at what Emerald said, Emerald was pretty strict. They said, we're not going to do this because if we do this, then the guy with the little teeny amount of loss and a big deductible loses every time. And we're not going to do that. That's not what we ought to be doing here. We ought to be giving them the most money we could get regardless of the deductible that they get. That was the social policy that Emerald put together, wasn't it? Your Honor, I'm not familiar with the case you're referring to. Well, I'm sorry. Employers, yes. Okay, employers, yes. Employers is a different case. It just simply is a different case. But you're right in the sense that the courts in Arizona look to public policy. The public policy here is to give the policyholder the benefit of the transaction. And one way to look at this, which is the same way that Karen Kane looked at it, is at the end of the 0405 policy period, Superstition had coverage for 0405. There's no question about that. And if they'd gone to some other company, say American Reliable instead of Travelers, they would have still had coverage for 0405 from Travelers. But instead, they renewed their policy with Travelers. And this is Travelers' argument, that the minute this policyholder renewed, it lost all coverage for 0405. And that's objectively irrational. And that's what this Court said in Karen Kane. Well, I guess that's the worry that I have, because under the general condition of four, we'll pay only for the covered loss discovered not more than one year from the end of the policy period, it seems to me that definitely you have the two periods which would be in effect. But if I go to General Condition 11, this limits the amount to the larger of the amounts recoverable, therefore limiting the amount to be paid to one limit of insurance. That's what General Condition 11 suggests. I think you're referring to 10. 10b? No, I don't think so. 11 is loss covered under this insurance and prior insurance issued by us or an affiliate. Right. Right. In other words, 11 deals with the circumstance when you have a continuation of coverage under the same company, which we do have here. 11 deals with the situation where a policyholder tries to recover the exact same loss in two policy periods. So if, for example, Ms. Ward here wrote the check in 04 and cashed the check in 05, a creative policyholder could say I want $250,000 under each one of those policy periods. And that's what Section 11 prevents. And that's exactly, for example, the Court said in ABS Clothing. Counsel, it occurred to me as I was plowing my way through all the briefs that possibly we should just be sending this to the Arizona Supreme Court to tell us what it would do. Your Honor, I think that's exactly right. And let me just clarify what I mean by that. I think this Court should decide the 0405 policy and rule that as to the 0405 policy, superstition is entitled to $250,000 in coverage. As to the earlier policies, I think there is a question, and this is probably what you're getting at, is whether Arizona would adopt the adverse domination doctrine. And I think that is an issue that can be certified and in many ways should be certified to the Arizona Supreme Court. If there are other issues that you're thinking about, that would be an appropriate point at which to resolve that issue as well. But Arizona does have a certification statute, and it does present a very convenient way to resolve this state law issue. You're down to about a minute and a half. Thank you. But you want to reserve it. All right. May it please the Court, Gary Valeriano for Travelers. Superstition argues that if travelers had wanted to restrict coverage for all losses suffered by an insured over time as a result of an employee's embezzlement scheme to one limit of liability, it should have said so. Superstition claims that travelers have not clearly and distinctly communicated the nature of this limitation to superstition. Well, it's difficult to deal with this because there are two key provisions in the policy, and both appear not in the conditions or in the exclusions, but in the coverage itself, one-page coverage, and one of them is limit of insurance. And it's the second provision of the policy, and it says the most we will pay for loss in any one occurrence, occurrences in quotes, is the applicable limit of insurance shown in the declarations. So your basic position is we have one occurrence rather than a series of occurrences here? Absolutely, yes. Well, I mean, that's a subject of debate. In terms of, yes. No, I mean, that's getting back to the differences among States. There's a very great difference among States on this precise question of whether something like this is a series of occurrences or one occurrence. I understand. I understand Your Honor's concern. And that is, in fact, what is reflected in Karen Kane and ABS and some other jurisdictions as well. But the point is the definition of occurrence states, occurrence means all loss caused by involving one or more employees, whether the result of a single act or a series of acts. I mean, I don't think that provision, when you read those two provisions together, they're fairly clear. It means all loss. I don't know how travelers could have said that more clearly or distinctly than that. All loss, whether it's done in 1980. So your position would be, let's say it's a different employee for the different policy, or would you say that's a different occurrence or not? If it's a different employee and if they're not in collusion? Right. Yeah, then they're definitely different. But what if they're in collusion? If they're in collusion, then I don't believe that it is a separate occurrence. It says all loss caused by involving one or more employees, whether the result of a single act or a series of acts. So it's a completely different embezzlement is a different – is the same occurrence from a different employee? A completely different embezzlement. Yeah. I mean, if you're – if I understand your argument, it's a loss limitation, not an occurrence limitation, which doesn't make any sense to me. Well, I think what I'm arguing is that it is an occurrence limitation. In other words, you could have two employee losses during the same period of time. Right. One may be operating completely exclusive of another. If they are conspiring together, then that series of acts constitutes one occurrence. Where does it say that in that, in the definition of occurrence? Occurrence means all loss caused by or involving one or more employees. Right. Hence, if one or more employees are acting in concert – Yeah, that's not in there. I mean, not to quibble, but that's not in there. Well, to take the real problem that Karen Kane pointed out and that counsel for superstition has pointed out is not so much in the sections that I've quoted, but in the fact that if you go back to the policy, there is section 15, which says that the policy period is as shown in the declarations. And this is the section where there is some dispute as to whether an occurrence can extend over one policy period. Right. Well, assuming hypothetically we have two occurrences, one in the prior policy year, one in the present policy year, just for the sake of argument, why don't we have at least two policies impacted by this? In other words, what I'm – I guess what I'm asking you about is to respond to the initial argument made by counsel that you have an occurrence and under the prior policy year, you have a year to ask for that damage, you know, you have a time limitation, and then you have a reversion back provision in the most current policy. I know I'm not being terribly articulate in my question, but I hope you understand the gist of it. Well, okay. In other words, it's different from what everyone's argued in the briefs, but I'm asking. If – I'm not clear on this. Yes. If the occurrence that occurred in the previous year is related to the same employee or involves the same facts, is that what we're talking about? The argument seems – the different argument made today, as I understand it, is that, look, at least you've got to have at least two policies at issue here. This is their argument, not mine. Because under the first – under the prior policy, there's a time limitation. You've got 12 months. We're within the 12 months. We can claim damage. And then under the current policy, you have a relation back, and at least you have coverage for the – for the current year up to the 250 limit. Okay. If I understand it correctly, then the way we're looking at this is – our argument is the first three years are out of the question because you haven't discovered it within the one year. Right. The immediately preceding policy may be in question because you have discovered it within the one year. That is where Section 11 comes in. And Section 11 says if there is – if any loss is covered partly by this insurance and partly by any prior canceled or terminated insurance that we issued you, the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance. Okay. So – and let me stop you right there. Under your interpretation, if, for example, Hartford had provided the prior coverage, Paragraph 11 would not pose a limitation. Is that right? Paragraph 11. Recovery from Hartford. We'll call it age. I'm just – Yes, yes. Yeah. If there was a different insurer for the prior policy period. I think if there were a different insurer for the prior policy period, this section wouldn't apply necessarily. Yeah. So your argument is, look, because Travelers provided for both periods, Paragraph 11 provides an additional limitation. That's correct. Under the scenario you've given us, that would be Section 10, perhaps, and that would again limit it to one policy period. Well, perhaps. But there's an argument that maybe that one could recover under a prior – prior insurance policy because 11 wouldn't be operative. And let me – let me just point out again that the only temporal limitation that's been argued is based upon, I think, what is Section 15, the policy period. The – the section that says we will pay for loss that you sustain through acts committed or events occurring during the policy period. This then opens up the question of whether an occurrence, which is all loss, can extend beyond one policy period or if it's limited to the one policy period. The thing here is that in this section, and something that has been glossed over, is the prefatory language. It says, subject to loss sustained during prior insurance condition, and then it goes on to that language, which means that there is no temporal limit because the loss sustained during prior insurance condition, Section 10, specifically provides coverage. It says if you sustained loss during the period of any prior insurance that you could have recovered except the time within which to discover loss had expired, we will pay for it under this insurance. So if there's any temporal limits, it's this policy plus any prior insurance because it is specifically laid out in Section 15. And I would point out to the Court that this language was not cited in Karen Kane. The Karen Kane Court, if you look at page 1187, cites a similar provision, but it only deals with the latter clause, that clause being the we will pay for loss that you sustain. The other case cited by Superstition in its reply brief, Robben and Sons, also has a provision which is similar to the one in Karen Kane. It does not have the prefatory language. And I think that the prefatory language is designed to make it clear that we are not imposing any temporal limits on what would constitute an occurrence. And that's, I think, something that needs to be pointed out and was argued quite heavily in the reply brief. Moving on to the other aspects of this, the Admiralty Fund case, the whole idea of adverse domination, the Admiralty Fund case, again, is a California case. It is limited to its facts. Those facts are not present here. The Karen Kane case declined to follow Admiralty Fund in that situation. There is no equivalent law in the State of Arizona, none that I could find, none that has been cited. The only other case cited in the reply brief is out of Oklahoma, and I don't really think that supplies much support. The fact here is that she was a bookkeeper. She didn't run the company. That's evident from the declarations that were submitted. Mr. Jones was the general manager of the company. She reported to him. She hid her acts, obviously, as all dishonest employees do or at least try to do, but that's not the same as adverse domination. So I don't believe that that would apply in this situation. Roberts. How do you feel about certification? I don't see the point. The policy to me is clear. I think to the extent that Employers Mutual has dealt with out-of-state cases in this not necessarily in the same context, but dealing with much the same policy, I don't see that that serves any purpose other than perhaps to delay what we're doing here. But I think the Fifth Circuit in the Madison Materials case, dealing with a policy which is like this policy, came to a contrary conclusion than did Karen Kane. So I don't know. Counsel, do you have any knowledge of how speedy the Arizona Supreme Court is when things are certified? We notice difference from state to state. Do you have any experience with it? I do not, Your Honor. I'm sorry. I have no idea how long that would take. I guess the problem that I have with going back to the limits of the policy of pay for a loss in one occurrence and then looking at the definition of occurrence to mean what it means, if I look at Karen Kane, they read those provisions, pretty exact provisions, to create an ambiguity. They certainly did. I think that's probably dicta in the terms of Karen Kane, because, remember, Karen Kane very specifically was dealing with California law. And if you look at the But do you find any Arizona cases that would suggest that it is an ambiguity? I mean, that addresses this exact issue? Not this exact issue. The closest we would come, of course, is Employers Mutual, which did look at the definition of occurrence, and they did state it's not ambiguous in a different context. But going back to Karen Kane, Karen Kane utilized not only the ABS case, which was obviously a California case, but also the Stonewall case. And it was actually the Stonewall case wherein the Karen Kane court found that there was probably an ambiguity with respect to occurrence. So those cases are very, very much of California. They are not of Arizona. I think that the language where Karen Kane talks about, well, there's an ambiguity, I don't think they were, I think they were hard pressed to find otherwise, given the way California had ruled. Remember, the district court, in the face of ABS, ruled in favor of one limit of liability. ABS, if we take ABS even itself, which I think, as I've said in the papers and tried to explain, is a badly reasoned decision, the Superior Court of California in California ruled in favor of the insurer. The case went up. It was a two-to-one decision, two judges ruling that it was ambiguous and that you could achieve more than one occurrence over the life of a policy or more limits than one. But there was a very strong dissenting opinion as well. So this issue is not certain. But, again, I direct you to the prefatory language of paragraph 10 in this policy, which is not, at least as far as I could see, evidence in, certainly not in Karen and in many of the other cases cited by a superstition. If you have any other questions or if I don't. Roberts. No. I think not. Judge Fletcher. No more. Very good. Thank you. Appreciate it, Bobby. Your Honor, if I could start with the definition of occurrence, which is obviously a key issue in this case. The provision that we rely on in our briefing is paragraph 15. It says, we will pay only for loss that you sustain through acts committed or events occurring during the policy period. And that's what tells the policyholder that the definition of occurrence is limited to the policy period. And that is precisely what the Oregon court held in Robin. We showed as well in our briefs that there is no distinction whatsoever between the policy provisions at issue here and the policy provisions that Karen Cain considered. And I would submit to the Court that this Court has got it right that Karen Cain should do exactly what it did there, here, with one exception. There is a very different factual record on adverse domination and control. Here, it shows that Ms. Ward did have complete and unsupervised discretion to write checks. And this Court in Karen Cain found precisely the opposite there, that the employee there couldn't write checks without permission. Going back to the issue of certification, this Court has certified issues to the Arizona Supreme Court in the past, and that would seem to be a very solid opportunity or possibility here as well. Judge Smith, it looked like you were just about to ask a question. No. Okay. No, I was about to just wonder. I was looking at your time, and I get your time is gone. My time is up, unless the Court has any questions. Time is up. He was hoping, you were hoping to get an extension from Judge Smith. Well, thank you both for your arguments. And it's an interesting case. And we will take another submission. Thank you, Your Honor. I appreciated both arguments very much here. These contract cases are very, very difficult. So thank you very much. So now we'll hear argument in McCabe v. Hart. Sorry about the false start earlier. Thank you.
judges: Fletcher B. , Thomas, Smith R.